UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| RONALD ETTIENNE, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:23-CV-244-TAV-CHS |
| CHRISTIAN LOPEZ, KEVIN YORK, BRANDON BARNES, TOMMY MAYNARD, JACKIE MATHENY JR., ZACK POSTHUMMUS, JANICE CORNETT, KELLWELL FOOD MANAGEMENT, WARREN COUNTY D.B.A. WARREN COUNTY DETENTION CENTER, and RONIESHA SANDERS, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff, a Tennessee Department of Correction inmate formerly housed in the Warren County Jail, has filed (1) a pro se complaint for violation of 42 U.S.C. § 1983 arising out of incidents during his Warren County Jail confinement [Doc. 2], in which he also requests appointment of counsel [*Id.* at 16–17]; (2) a motion for leave to proceed *in forma pauperis* [Doc. 1]; and (3) a motion to issue subpoenas [Doc. 4], all of which are now before the Court. The Court will address Plaintiff's request for appointment of counsel [Doc. 2, pp. 16–17] and motion for leave to proceed *in forma pauperis* [Doc. 1] before screening his complaint [Doc. 2] and addressing his motion to issue subpoenas [Doc. 4].

I.  **Appointment of Counsel**

In his complaint, Plaintiff requests appointment of counsel because (1) Defendants have refused his requests for documents regarding their policies and procedures related to his claims, and (2) he lacks legal training and is indigent, which he states are "typical[]" characteristics of pro se prisoner plaintiffs [Doc. 2, pp. 16–17].  For the following reasons, this request for counsel is **DENIED**.

Appointment of counsel in a civil proceeding is not a constitutional right, but a privilege justified only in exceptional circumstances.  *Lavado v. Keohane*, 992 F. 2d 601, 605–06 (6th Cir. 1993).  A district court has discretion to determine whether to appoint counsel for an indigent plaintiff.  *Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992).  In exercising that discretion, the district court should consider the nature of the case, whether the issues are legally or factually complex, and the plaintiff's ability to present his claims.  *Lavado*, 992 F.2d at 605–06.

As to the first two factors, this is a complaint for violation of § 1983 arising out of events during Plaintiff's incarceration [Doc. 2, pp. 8–11], none of which are factually or legally complex.  As to the third factor, it is apparent that Plaintiff can adequately present his claims.  Also, while Plaintiff asserts that Defendants have refused his requests for documents showing their policies and practices related to his claims, this does not render his case exceptional, as it is not customary for parties to engage in discovery prior to a lawsuit.  Moreover, as Plaintiff acknowledges, his lack of legal training and indigency are typical of prisoners acting pro se.

Thus, Plaintiff has not established that this is an exceptional case that justifies the Court appointing him counsel, and his request for appointment of counsel [*Id.* at 16–17] is **DENIED**.

II.     **Motion for Leave to Proceed *In Forma Pauperis***

As it appears from his motion for leave to proceed *in forma pauperis* [Doc. 1] that Plaintiff is unable to pay the filing fee in one lump sum, this motion is **GRANTED**.

Plaintiff is **ASSESSED** the civil filing fee of $350.00. 28 U.S.C. § 1914(a). The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to his inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account is directed to submit twenty percent (20%) of his preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk is **DIRECTED** to send a copy of this order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's facility to ensure compliance with the Prison Litigation Reform Act ("PLRA") requirements for payment of the filing fee.

3

### III. Complaint Screening

#### A. Standard

Under the PLRA, district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive a PLRA initial review, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Id.* at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

4

**B. Allegations**

In his complaint, Plaintiff sets forth four separate incidents for which he seeks § 1983 relief [Doc. 2, pp. 8–11]. The Court summarizes these incidents in the same order as Plaintiff.

In the first incident, Plaintiff claims that an inmate who was "under the supervision of Janice Cornett who works for Kellwell Food Management" defecated on the floor of a "cooler/freezer" [*Id.* at 8]. But jail officials did not discard all the food in the cooler/freezer and served some of that food to inmates, which Plaintiff claims risked inmates' health. Plaintiff then claims that Defendants Sheriff Matheny, Lopez, and Kellwell Food Management, as well as other unnamed jail officials, all acting in their official and individual capacities, failed to properly investigate this incident, denied equal protection, and committed acts of official misconduct and retaliation [*Id.*]. Plaintiff supports his retaliation allegation by stating that these individuals and entities took his personal property due to this and other incidents [*Id.* at 9].

In the second incident, Plaintiff states that after an inmate "[s]upposedly . . . over[]dosed on drugs," jail officials moved certain inmates to the recreation yard to search their pod [*Id.*]. When jail officials brought the inmates back inside after this search, "several inmates noticed some of their property was missing." Unspecified inmates confronted Defendant Lopez about the missing property, and Defendant Lopez stated that other cells also were missing property, and that he guessed they were "all missing something" [*Id.*]. Plaintiff claims that Defendant Lopez's failure to investigate this

5

incident caused him to lose property and violated his Eighth Amendment rights [*Id.* at 10]. Plaintiff additionally claims that this incident caused him to be "confined to his cell for 75 hours without being able to shower, exercise[,] or use the phones." According to Plaintiff, "[t]he pod search yielded no illegal drugs or foul play," and jail officials never proved that drugs caused the inmate health issue that led to that search. Nevertheless, since then, inmates have been segregated and locked down twenty-three hours a day without any explanation, write ups, or disciplinary forms. Defendant Lopez also took the inmates' legal tablet [*Id.* at 11]. Plaintiff claims that these incidents violate his Eighth Amendment and due process rights, and that Defendant Matheny is responsible for these occurrences due to his failure to supervise Defendant Lopez [*Id.* at 10].

In the third event, Plaintiff claims that he "wrote a grievance" against Defendant Posthummus because Plaintiff had properly sought forms to file a complaint against the jail two weeks earlier but had not received them [*Id.* at 11]. However, Defendant Posthummus answered that grievance, which Plaintiff states violated his right to due process [*Id.*].

In the fourth event, Plaintiff complains that he sent in an inmate trust account certificate form through a jail official to Defendant Sanders, but she refused to sign the form [*Id.*]. Plaintiff states that he sent the form in anyway [*Id.*].

After Plaintiff describes the four incidents underlying his complaint, he sets forth various legal standards, arguments, and citations [*Id.* at 13–16]. He also seeks issuance of subpoenas and states that Defendants will not release documents regarding their policies

and practices regarding the events in the complaint [*Id.*]. Plaintiff contends that he "is not merely pos[i]ting a theory of legal liability that is unsupported by specific factual allegations" but instead lacks legal training and is indigent [*Id.* at 16].

Plaintiff then states that he has sued Defendant Christian Lopez in his official capacity only, Defendant Kellwell Food Management in its official and individual capacities, Defendant Kevin York in his official capacity only, Defendant Brandon Barnes in his official capacity only, Defendant Jackie Matheny in his official and individual capacities, Defendant Zack Posthummus in his official and individual capacities, Defendant Janice Cornett in her individual capacity only, Defendant Warren County in its official capacity, and Defendant Roniesha Sanders in her official and individual capacities [*Id.* at 3–5]. However, Plaintiff later states that he has sued all Defendants in their official capacities [*Id.* at 15]. As relief, Plaintiff seeks one million dollars for his pain and suffering, and for Warren County Jail conditions "to come to code [with] proper living conditions for other inmate(s) th[a]n himself that are confined to custody" [*Id.* at 12].

### C. Analysis

For the reasons set forth below, the complaint fails to state a claim upon which relief may be granted under § 1983.

#### 1. Cooler/Freezer Incident

In the first incident Plaintiff sets forth in his complaint, he asserts that after an inmate defecated in a jail cooler/freezer, jail officials did not throw away all the food in that cooler/freezer and fed some of it to inmates, which he claims risked the inmates' health

7

[*Id.* at 8]. Plaintiff then claims that Defendants Sheriff Matheny, Lopez, and Kellwell Food Management, as well as other unnamed jail officials, failed to properly investigate this incident [*Id.* at 9]. In the portion of his complaint setting forth this incident, Plaintiff also refers to equal protection, official misconduct, and retaliation, specifically stating that jail officials and entities retaliated against him by taking his personal property due to this and other incidents [*Id.*].

But while Plaintiff generally states that the food from the cooler/freezer that jail officials fed to inmates after this incident posed a health risk to these inmates, he does not state that jail officials served this food to him, and he cannot assert the constitutional rights of other inmates. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989) (holding that a "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners").

And even if the Court assumes that jail officials served Plaintiff food from the cooler/freezer, he provides no facts from which the Court can plausibly infer that any Defendant violated Plaintiff's constitutional rights by doing so. It is well-settled that prison officials must take reasonable measures to protect prisoners' safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). Liability attaches to a prison official's failure to protect a prisoner where the prisoner was "incarcerated under conditions posing a substantial risk of serious harm," and the prison official acted with deliberate indifference to the prisoner's safety. *Id*. at 834. "Deliberate indifference" means that a prison official is liable only

8

where he knows that the inmate faces a substantial risk of serious harm and disregards that risk. *Id*. at 837 (quotation marks omitted). Plaintiff, however, does not allege or suggest that the food products that were in the cooler/freezer when the inmate defecated and that jail officials served to inmates came into any contact with the feces. Accordingly, this claim is purely speculative, and it fails to state a plausible claim for violation of Plaintiff's constitutional rights.

Additionally, while Plaintiff claims that various Defendants failed to properly investigate this incident and refers generally to equal protection, official misconduct, and retaliation, he fails to provide any facts from which the Court can plausibly infer that any Defendant violated his § 1983 rights based on these conclusory claim references, as set forth more fully below.

First, Plaintiff did not have a constitutional right to a proper investigation of the cooler/freezer incident. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973))); *Frodge v. City of Newport*, 501 F. App'x 519, 532 (6th Cir. 2012) (providing that a "failure to act . . . do[es] not constitute 'active constitutional behavior' as required [to violate § 1983] and thus, [is] not actionable" under § 1983 (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999))).

Next, Plaintiff does not set forth any facts to support a plausible inference that any Defendant violated his right to equal protection based on the cooler/freezer incident. *Ctr.*

9

*For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (finding that a complaint failed to state an Equal Protection claim where it did not "make a plausible allegation that similarly situated organizations and individuals, of a different political viewpoint, have not been subject to the same alleged treatment by Defendants.").

Similarly, Plaintiff's general reference to "official misconduct" does not allow the Court to plausibly infer a violation of his constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (formulaic recitations of a claim are insufficient to plausibly state a claim for relief).

Likewise, Plaintiff does not set forth any facts from which the Court can plausibly infer that any Defendant took any action against him due to his protected conduct during or related to this incident, as required to state a plausible § 1983 retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (providing that a retaliation claim has three elements (1) "the plaintiff engaged in protected conduct"; (2) the defendant took a sufficiently serious adverse action that would deter a prisoner of "ordinary firmness" from continuing to engage in the protected conduct against the plaintiff; and (3) the plaintiff's protected conduct motivated the adverse action at least in part).

As such, Plaintiff's allegations regarding the cooler/freezer incident fail to allow the Court to plausibly infer any violation of § 1983, and they are **DISMISSED**.

### 2. Pod Search

The second incident underlying the complaint arises out of a pod search due to a suspected inmate overdose. Plaintiff claims that this search resulted in (1) loss of property

for him and others, which Defendant Lopez did not investigate; (2) him being confined to his cell without a shower, exercise, or phone access for seventy-five hours; (3) the pod being segregated and locked down twenty-three hours a day; and (4) loss of the inmates' legal tablet. Plaintiff also asserts that Defendant Lopez's failure to investigate this incident caused him to lose property and violated both his Eighth Amendment rights and his right to due process, and that Defendant Matheny is responsible for these incidents due to his failure to supervise Defendant Lopez. For the reasons set forth below, these allegations do not state a plausible claim for violation of § 1983.

### a. Missing Property

Plaintiff's allegation that he was missing property after jail officials searched his cell does not state a plausible § 1983 claim against any named Defendant for various reasons, including most notably that Plaintiff does not allege that any named Defendant was personally involved in taking his property. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim). Additionally, Defendant Lopez's alleged failure to investigate Plaintiff's loss of property does not rise to the level of a constitutional violation. *Mitchell*, 487 F.3d at 378; *Frodge*, 501 F. App'x at 532.

11

### b. Denial of Shower, Recreation, and Phone for Seventy-Five Hours

Plaintiff's assertions that he was unable to shower, have recreation, or access the phone for seventy-five hours after the pod search fail to rise to the level of a constitutional violation.

Specifically, Plaintiff does not set forth any facts to support a plausible inference that these temporary limitations subjected him to an extreme deprivation of a life necessity in violation of his Eighth Amendment rights. *Hudson v. McMillan*, 503 U.S. 1, 8–9 (1992) (providing that allegations of "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" support a cognizable Eighth Amendment conditions-of-confinement claim (citations and quotations omitted)); *Richmond v Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (noting that the Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . . , i.e. only six days' is not actionable conduct." (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000))); *Thornton v. Sevier Cnty. Jail*, No. 3:23-CV-191, 2023 WL 4707133, at *5 (E.D. Tenn. July 24, 2023) (finding that "[a]n occasional three-day deprivation of showers, clean clothes, and recreation does not deprive an inmate of 'the minimal civilized measure of life's necessities'" (citation omitted)).

Also, Plaintiff's allegation that he was unable to use the phone for 75 hours fails to allege a violation of his First Amendment rights. *United States v. Footman*, 215 F.3d 145, 155 (1st Cir. 2000) ("Prisoners have no per se constitutional right to use a telephone"); *Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994) ("While prisoners

retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls.").

### c. Segregation and Lockdowns

Plaintiff's allegations regarding his pod being subjected to segregation and lockdowns after the pod search also fail to state a claim upon which relief may be granted under § 1983.

To sustain an action against Defendants based on the segregation and lockdowns, Plaintiff must show the existence of a protected liberty or property interest with which Defendants interfered. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."). But Plaintiff does not have a liberty interest "in avoiding transfer to more adverse conditions of confinement." *Id*. (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Moreover, the Sixth Circuit has stated that "administrative segregations have repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (finding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (finding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*"). However, "a liberty interest in avoiding particular

13

conditions of confinement may arise" where that confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 222–23 (citing *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)).

As Plaintiff has not set forth any facts from which the Court can plausibly infer that his segregation and/or lockdowns have subjected him to hardship that would rise to the level of a constitutional violation, these allegations fail to state a plausible claim for violation of § 1983.

### d. Legal Tablet

Plaintiff also alleges that Defendant Lopez took away inmates' legal tablet after the pod search. However, as Plaintiff does not suggest that this denial of the legal tablet has prejudiced him in any way, his lack of access to this tablet fails to rise to the level of a constitutional violation. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of adequate legal resources to state a claim for denial of access to courts (citing *Lewis v. Casey*, 518 U.S. 343 (1996))). This conclusion is bolstered by the fact that it is apparent that Plaintiff still has access to legal resources, as his complaint contains ample legal citations.

Accordingly, Plaintiff's allegation that Defendant Lopez took inmates' legal tablet does not allow the Court to plausibly infer a violation of § 1983.

### e. Failure to Supervise

Plaintiff additionally claims that Defendant Matheny is liable under § 1983 for the incidents that followed the pod search due to his failure to supervise Defendant Lopez. However, for the reasons set forth above, Plaintiff has not plausibly alleged that Defendant Lopez violated his constitutional rights in the incidents that followed the pod search. Nor has Plaintiff set forth any facts to support a plausible inference that Defendant Matheny "authorized, approved[,] or knowingly acquiesced" in any violation of his constitutional rights, as required for Defendant Matheny to be liable for any such violation under § 1983. *Troutman v. Louisville Metro Dep't of Corrs.*, 979 F.3d 472, 487–88 (6th Cir. 2020) (providing that "at minimum a plaintiff must show that a supervisory official at least implicitly authorized, approved[,] or knowingly acquiesced in the unconstitutional conduct of the offending subordinate" in order for the supervisory official to be liable for a subordinate's acts under § 1983) (internal quotation marks and citations omitted).

Accordingly, Plaintiff's allegation that Defendant Matheny is liable for Defendant Lopez's actions fails to allege a plausible claim for violation of § 1983.

### 3. Grievance

Plaintiff next seeks § 1983 relief because Defendant Posthummus answered a grievance that Plaintiff filed against this Defendant. However, this allegation fails to state a claim upon which relief may be granted under § 1983, as Plaintiff does not have a constitutional right to an effective grievance procedure. *Argue v. Hofmeyer*, 80 F. App'x

15

427, 430 (6th Cir. 2003) (providing that a prisoner has "no inherent constitutional right to an effective prison grievance procedure").

### 4. Trust Account Form

The last claim Plaintiff sets forth in his complaint arises out of his alleged failure to timely obtain an inmate trust account statement form from Defendant Sanders to file his claims against the Warren County Jail. Again, however, as Plaintiff does not suggest that this denial prejudiced him at all, this allegation does not rise to the level of a constitutional violation. *Pilgrim*, 92 F.3d at 416 (6th Cir. 1996). Moreover, the record demonstrates that Plaintiff's inability to obtain this form from Defendant Sanders did not prejudice Plaintiff, as the Court has granted Plaintiff leave to proceed *in forma pauperis* in this action.

### 5. Claims Against Warren County, Kellwell Food Management, and All Individual Defendants in Their Official Capacities

Plaintiff's claims against the individual Defendants in their official capacities[1] are actually against the individual Defendants' employers, specifically Warren County and Kellwell Food Management, whom Plaintiff also sued separately [*Id*. at 2]. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (holding "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) ("[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."). Thus, the

---

[1] While the complaint is somewhat ambiguous on this issue, Plaintiff ultimately states that he has sued all Defendants in their official capacities [*Id*. at 15]. Thus, the Court construes the complaint to sue all individual Defendants in their official capacities.

16

Court evaluates Plaintiff's claims against the individual Defendants in their official capacities as additional claims against Defendants Warren County and Kellwell Food Management.

For Plaintiff to state a claim upon which relief may be granted under § 1983 as to Defendants Warren County and Kellwell Food Management, he must plausibly allege that a custom or policy of these entities caused a violation of his constitutional rights. *See Monell.*, 436 U.S. at 708 (Powell, J., concurring) (explaining a municipality can only be held liable for a constitutional violation when the violation resulted from "implementation of [the municipality's] official policies or established customs"); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (holding that a private corporation acting under color of state law may not be liable under § 1983 for constitutional violations based upon a theory of *respondeat superior* but rather may be liable only where its custom or policy caused a constitutional violation) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992) (citing *Monell*, 436 U.S. at 691)).

However, as set forth above, Plaintiff's complaint does not plausibly allege that any violation of his constitutional rights occurred. As such, the Court cannot plausibly infer that that a custom or policy of Defendants Warren County and Kellwell Food Management caused any violation of Plaintiff's constitutional rights. Accordingly, Defendant Warren County and Kellwell Food Management and all official capacity claims against the individual Defendants will be **DISMISSED**.

## IV. Conclusion

For the reasons set forth above:

1. Plaintiff's request for appointment of counsel [Doc. 2, pp. 16–17] is **DENIED**;

2. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

3. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

4. The custodian of Plaintiff's inmate trust accounts is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

5. The Clerk is **DIRECTED** to provide a copy of this memorandum opinion and the accompanying judgment order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

6. Even liberally construing the complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted under § 1983;

7. Accordingly, this action will be **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and Plaintiff's motion for issuance of subpoenas is **DENIED as moot**; and

8. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE